**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 10-cv-02079-CMA-MJW

GEMA MARTINEZ,

    Plaintiff,

v.

DENVER POLICE OFFICER MICHAEL GABRIEL,

    Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION *IN LIMINE* AND GRANTING
DEFENDANT'S FOURTH MOTION *IN LIMINE***

---

This matter is before the Court on Defendant Michael Gabriele's ("Defendant Gabriele") Motions *In Limine* (Doc. # 76), and Defendant Gabriele's Fourth Motion *In Limine*. (Doc. # 81.)

## I. BACKGROUND

This is a Fourth Amendment case brought under 42 U.S.C. § 1983 concerning the allegedly unlawful entry and search of Plaintiff Gema Martinez's ("Plaintiff") home on August 27, 2008. On that day, Denver Animal Control received a complaint that Plaintiff had a pit bull at her home, in violation of Denver's "Pit Bull Ordinance," which makes it unlawful for any person "to own, possess, keep, exercise control over, maintain, harbor, transport, or sell within the city any pit bull." Denver, Co., Mun. Code § 8-55. After Animal Control officers arrived at Plaintiff's home, Plaintiff refused to surrender her pit

bull and the Denver Police Department was called.  Shortly thereafter, Denver Police officers David Archuleta, Michael Gabriele, and Nicholas Sagan arrived at Plaintiff's house.

The parties dispute what happened next.[1]  Defendant Gabriele asserts that Plaintiff surrendered her pit bull "[a]fter several minutes of knocking on her door, ringing her doorbell, and requesting that Plaintiff give the officers the pit bull." (Doc. # 76 at 2.) Plaintiff claims that the officers coerced her to answer the door by "repeatedly knock[ing] on her front door, bang[ing] on the outside walls of her small house, yell[ing] to her through the walls and the open windows that she would be arrested, jump[ing] over a locked fence in the backyard to pound on her back door, and shut[ting off the electricity to her entire house." (Doc. # 85 at 1-2.)  The parties dispute whether Plaintiff consented for Defendant Gabriele to enter and search her home after she had surrendered her pit bull.

Plaintiff initiated this civil action by filing a complaint on August 27, 2010. (Doc. # 1.)  She alleged that the three officers violated her Fourth Amendment rights by entering and/or searching her home without a warrant, consent, or exigent circumstances justifying entry. (Doc. # 1 at 1-2.)  After the Court's resolution of various pre-trial motions, Defendant Gabriele is the sole remaining defendant.

On May 14, 2012, Defendant Gabriele filed three motions *in limine*, requesting (1) exclusion of the summaries of administrative investigations of Officers Archuleta,

---

[1] Because there are so many disputed facts, the Court denied Plaintiff's Motion for Partial Summary Judgment on January 18, 2012.  (Doc. # 59.)

Gabriele, and Sagan, (2) exclusion of Officer Sagan's pre-employment polygraph examination, and (3) exclusion of voicemail records. (Doc. # 76.) On May 18, 2012, Defendant Gabriele moved to exclude any evidence or testimony regarding the fact that Officer Archuleta turned off the power to Plaintiff's home before Plaintiff allegedly consented to Defendant Gabriele entering her home. (Doc. # 81.) Plaintiff responded to all four motions *in limine* on May 29, 2012, and Defendant Gabriele filed a combined reply on June 14, 2012. (Doc. ## 85, 86, 87.)

## II. ANALYSIS

### A. FIRST MOTION *IN LIMINE*

In his first motion *in limine*, Defendant Gabriele moves to exclude all summaries of past administrative investigations concerning the three officers involved in the entry and search of Plaintiff's home (himself, Archuleta, Sagan). (Doc. # 76 at 2.) These summaries list all administrative investigations of the three officers that have occurred during the officers' entire careers. (Doc. # 76-2.) The administrative investigations listed in these summaries include policy violations, both sustained and not sustained, ranging from those for improper procedure, to discourtesy, to excessive force. None of the administrative investigations into any of the three officers involve allegations of untruthfulness, nor do any investigations involve allegations of an unlawful entry or search. (Doc. # 76 at 2-3.)

Defendant Gabriele contends that these administrative summaries are irrelevant under Fed. R. Evid. 401 and 403, that they are inadmissible character evidence under

Fed. R. Evid. 404(b), and that they constitute inadmissible hearsay under Fed. R. Evid. 802. (Doc. # 76 at 3, 4.) In response, Plaintiff argues that the administrative investigations are admissible character evidence under Rule 404(b) because they show Defendant Gabriele's "absence of mistake" and "knowledge, familiarity, and expertise in the rules of citizen-officer contact and home entries." (Doc. # 85 at 2.)

Federal Rule of Evidence 404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Such evidence, however, "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Even when evidence of a crime, wrong, or other act is offered for a proper purpose under Rule 404(b), such evidence still must be relevant and have a probative value that is not substantially outweighed by the danger of unfair prejudice. *See Huddleston v. United States*, 485 U.S. 681, 689 (1988) ("Evidence is admissible under Rule 404(b) only if it is relevant."). Thus, the Court applies a four-part test, which requires that:

> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially out-weighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that the evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

*United States v. Rackstraw*, 7 F.3d 1476, 1479 (10th Cir. 1993); *United States v. Sarracino*, 131 F.3d 943, 948 (10th Cir. 1997).

The Court finds that the administrative summaries are not offered for a proper purpose. Plaintiff identifies no investigations concerning whether any of the officers violated the Fourth Amendment by entering or searching a residence without consent. Unrelated (and often unsubstantiated) policy violations do not show an "absence of mistake" or the officers' "knowledge . . . in the rules of . . . home entries." (Doc. # 85 at 2.) Rather, the evidence is offered to prove the bad character of the officers, which is not a proper purpose under Rule 404(b). Even assuming *arguendo* that the evidence was offered for a proper purpose, the Court finds that any probative value (if there be any) is substantially outweighed by the danger of prejudice to Defendant Gabriele under Fed. R. Evid. 403.[2] Thus, the Court grants Defendant Gabriele's first motion *in limine* to exclude the administrative summaries regarding Officers Archuleta, Gabriele, and Sagan.

**B.     SECOND MOTION *IN LIMINE***

In his second motion *in limine*, Defendant Gabriele moves to exclude Officer Sagan's pre-employment polygraph examination, taken on December 5, 1995. (Doc. # 76 at 5.) Defendant Gabriele contends that polygraph results are generally inadmissible, and that no exception to that rule applies in this instance. (Doc. # 76 at 5.)

---

[2]   Because the administrative summaries are improper character evidence under Rule 404(b), the Court declines to address Defendant Gabriele's alternative argument that the administrative summaries are inadmissible hearsay.

In response, Plaintiff contends that Officer Sagan's pre-employment polygraph examination is relevant because it relates to his character for truthfulness. (Doc. # 85 at 2.)

"The general rule is that polygraph results are inadmissible." *Palmer v. City of Monticello*, 31 F.3d 1499, 1506 (10th Cir. 1994). The exception to this general rule occurs "[i]f it is relevant that the polygraph examination was performed, as a fact in and of itself, regardless of what the results were." *Id.* Here, the fact that Officer Sagan took a polygraph test is not relevant in and of itself; rather, Plaintiff offers the results of the examination to attack Officer Sagan's credibility. Thus, the Court finds that the results of Officer Sagan's pre-employment polygraph examination are not relevant and the Court will grant Defendant Gabriele's second motion *in limine*.[3]

## C.     THIRD MOTION *IN LIMINE*

In his third motion *in limine*, Defendant Gabriele moves to exclude the voicemail message that he left for Plaintiff when he was attempting to persuade her to surrender the pit bull. (Doc. # 76 at 6.) Plaintiff does not dispute that she did not hear Defendant Gabriele's voicemail message until after the entry and search of her home occurred. (Doc. # 76-1 at 47:23-48:12.) Because Plaintiff did not listen to the voicemail message until after the entry and search of her home, Defendant Gabriele contends that the recording should be excluded as irrelevant under Fed. R. Evid. 401. (Doc. # 76 at 7.) Defendant Gabriele also argues that the voicemail message is "likely to confuse the

---

[3]   The Court also notes the extremely limited probative value of the polygraph results, as the examination was taken in 1995, over seventeen years ago.

issues and should be excluded under Fed. R. Evid. 403." (*Id.*)  In response, Plaintiff asserts that the voicemail recording "substantiates and corroborates" her "reasonable fears of the officer's show of force" and is relevant as to whether she was "capable of giving voluntary and free consent to Defendant Gabriele." (Doc. # 85 at 3.)  Plaintiff also contends that the voicemail is "relevant to [Defendant] Gabriele's state of mind at the time he made the call." (*Id.* at 4.)

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend IV.  "A warrantless search of a suspect's premises is unreasonable per se under the Fourth Amendment unless the government shows that the search falls within one of a carefully defined set of exceptions, such as a valid consent." *Eidson v. Owens*, 515 F.3d 1139, 1145-46 (10th Cir. 2008) (quoting *United States v. Glover*, 104 F.3d 1570, 1583 (10th Cir. 1997)). "The validity of a consent-based search is based upon 'whether the consent was the product of an essentially free and unconstrained choice by the maker or whether it was the product of duress or coercion, express or implied.'" *Id.* at 1146 (quoting *United States v. Sawyer,* 441 F.3d 890, 895 (10th Cir. 2006)).  Circumstances relevant to the validity of a consent "include physical mistreatment, use of violence, threats, promises, inducements, deception, trickery, or an aggressive tone, the physical and mental condition and capacity of the defendant, the number of officers on the scene, and the display of police weapons." *Id.*

In order to determine whether consent was freely and voluntarily given, Defendant Gabriele's conduct "is to be viewed objectively." *Berglund v. Pottawatomie County Bd. of County Com'rs*, 350 Fed. Appx. 265, 269 (10th Cir. 2009). Thus, the issue is whether a reasonable officer would have believed he had consent to enter Plaintiff's residence given the totality of the circumstances. *Id.*; *see also Huff v. City of Burbank*, 632 F.3d 539, 549 (9th Cir. 2011) ("[t]he reasonableness inquiry is objective, evaluating whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them"), *rev'd on other grounds by Ryburn v. Huff*, 132 S.Ct. 987 (2012).

Because Plaintiff did not hear the voicemail message, it is not relevant to show whether or not she freely consented to entry of her home. However, Defendant Gabriele knew that he had left a voicemail message and he had no reason to believe that Plaintiff had not listened to it before she allegedly consented to entry of her home. Assuming the voicemail message left by Defendant Gabriele was threatening or coercive in some way, the message may be relevant to determining whether Defendant Gabriele reasonably believed that Plaintiff had freely consented for him to enter and search the residence. *See Bergulund*, 350 F. App'x at 269. Thus, the relevance of the voicemail recording depends on the contents of the recording, which has not been submitted to the Court. The Court cannot weigh the probative value of the voicemail message against the danger of confusing the issues under Fed. R. Evid. 403 without

first listening to the voicemail message. Accordingly, Defendant Gabriele's third motion *in limine* is denied without prejudice.

### D.   FOURTH MOTION *IN LIMINE*

In his fourth motion *in limine*, Defendant Gabriele moves to exclude all evidence and testimony concerning the fact that Officer Archuleta had turned off the power to Plaintiff's house before she allegedly consented to Defendant Gabriele's entry into her home. (Doc. # 81.) In her response (Doc. # 86), Plaintiff does not dispute that Defendant Gabriele was unaware of the fact that Officer Archuleta had turned off the power. Because Defendant Gabriele's conduct is to be viewed objectively from the perspective of a reasonable officer, *see Berglund*, 350 F. App'x at 269, any evidence and testimony relating to Officer Archuleta turning off the power is irrelevant to the issue of whether Defendant Gabriele reasonably believed that Plaintiff freely consented for him to enter and search her home. Thus, the Court grants Defendant Gabriele's fourth motion *in limine* and will exclude all evidence or testimony relating to the fact that Officer Archuleta turned off the power to Plaintiff's home.

### III.   CONCLUSION

For the reasons stated above, it is ORDERED that Defendant Gabriele's Motions *in Limine* (Doc. # 76) are GRANTED IN PART AND DENIED IN PART. Specifically, Defendant Gabriele's first and second motions are GRANTED and Defendant Gabriele's third motion is DENIED.

FURTHER ORDERED that Defendant Gabriele's Fourth Motion *In Limine* (Doc. # 81) is GRANTED.

DATED: March   05  , 2013

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge